Carolyn J. Johnsen - 011894
cjjohnsen@jsslaw.com
Kami M. Hoskins - 026271
khoskins@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:13-bk-20029<br><br>**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 345 AND 363 AUTHORIZING MAINTENANCE AND USE OF DEBTOR'S EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, AND BUSINESS FORMS**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

Surgical Specialty Hospital of Arizona, LLC, debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), by and through its undersigned counsel, hereby files the *Emergency Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 345, 363 Authorizing Maintenance and Use of Debtor's Existing Bank Accounts, Cash Management System, and Business Forms* (the "**Motion**"). The Debtor supports the Motion with the contemporaneously filed *Declaration of William J. Comer in Support of First Day Motions* (the "**Comer Declaration**"), the following Memorandum of Points and Authorities, and all matters of record.

# MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE.

1. On November 19, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business and manage its assets as debtor in possession.

3. This Court has jurisdiction over these Chapter 11 proceedings under 28 U.S.C. §§ 157 and 1334.

4. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2).

5. The Debtor is an Arizona limited liability company with its principal place of business in Phoenix, Maricopa County, Arizona.

6. Venue of Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7. The relief requested by this Motion may be granted in accordance with the provisions of 11 U.S.C. §§ 105(a), 345, and 363, FED. R. BANKR. P. 9006(c) and 9007, and LOCAL R. BANKR. P. 9013-1(h).

## FACTUAL BACKGROUND

**A. Overview.**

1. The Debtor was formed on March 28, 2005 under the laws of the State of Arizona. It also operates under the name The Surgical Hospital of Phoenix. The principal activity of the Debtor is to provide surgical operating facilities and related healthcare services to doctors and their patients in Maricopa County, Arizona.

2. The Debtor is a full-service hospital specializing in inpatient and outpatient spine and orthopedic surgeries. It also provides an additional wide range of procedures including bariatric, general surgery, pain management, gastrointestinal, imaging and lab services. The Debtor is a 100% physician-owned hospital consisting

of 15 physician owners (members) and has approximately 200 physicians credentialed to provide services. The Debtor's staff consists of about 100 employees, including nurses.

3. William J. Comer manages the Debtor and is the Chief Executive Officer. The Debtor's Board of Directors is comprised of Daniel Lieberman, Chair; Christopher Yeung, Chief of Staff; Steven Kassman, owner designee; and William J. Comer, ex-officio.

4. The Debtor leases its hospital facility from SSHA Building, LLC ("**SSHA**"), an Arizona limited liability company owned by the physicians who also own the Debtor. The Debtor's monthly lease payments to SSHA are $101,946.20. SSHA pays a monthly management fee of $4,574.63 to the Debtor.

5. The Debtor has been designated as the preferred healthcare provider of the Phoenix Coyotes, which are part of the National Hockey League. The Debtor consistently demonstrates low infection rates (currently .03%) and very high patient satisfaction scores (currently on average of 83%). The Debtor prioritizes quality measures and patient care and as a result has patients and their families providing superior feedback.

**B.** **Assets and Liabilities.**

6. The Debtor's assets consist of inventory and supplies believed to be valued at approximately $1,000,000.00, equipment believed to be valued at approximately $1,800,000.00, and collectible receivables believed to have a value of approximately $1,300,000.00. Annual gross revenues are about $70,000,000.00; annual net revenues are about $22,000,000.00.

7. The Debtor's secured debt consists of about $425,000.00 owed to Wells Fargo Bank, National Association ("**Wells Fargo**"), which claims a security interest in all of the Debtor's assets, plus approximately $450,000.00 related to various capital leases.

8. The Debtor's accounts payable totals approximately $2,700,000.00, and total unsecured trade debt is approximately $3,200,000.00. The Debtor has a loan outstanding from its affiliate, SSHA in the amount of approximately $2,145,833.39.

9. In addition, the Debtor, as a physician-owned hospital, has the obligation to report potential compliance issues pursuant to various healthcare regulations. The Debtor's pending issues could result in liability for the return of Medicare/Medicaid funds as high as $14,700,000.00. The Debtor, however, disputes such liability and has been working with the appropriate agencies toward a resolution.

**C.    Events Precipitating the Bankruptcy Filing.**

10. Over the last few years, the Debtor has suffered from cash-flow problems based on a number of administrative issues, including the lack of strict vendor and supply management, taking on non-profitable cases, maintaining unprofitable healthcare payor contracts, inefficient management of accounts receivable, overstaffing, and dealing with regulatory questions. Since Mr. Comer's arrival in 2012, the Debtor has taken many steps to rectify these problems. Specifically, the Debtor has reduced salaries by over $2,000,000.00; reduced costs of certain of its critical surgical devices, namely implants; and eliminated most of its non-profitable cases, all while maintaining patient satisfaction and quality measures at industry best-practice standards.

11. Nevertheless, despite the past and on-going efforts to increase revenues, decrease expenses, and maintain quality measures, the tight cash situation persists. Consequently, the Debtor believes that a Chapter 11 proceeding would give it a respite from the cash strains and allow it to better address creditor issues and restructure its operations and its debt.

## RELIEF REQUESTED

12. The Debtor seeks entry of interim and final orders authorizing, but not

requiring the Debtor to use and maintain its existing bank accounts, cash management system, and business forms. The Debtor is a healthcare company that maintains, among other things, Medicare accounts. The relief requested herein will allow the Debtor to manage effectively its Chapter 11 case and reduce business disruptions related to closing existing bank accounts and opening debtor-in-possession accounts.

13. *The United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases* (the "**Guidelines**")[1] provides that Chapter 11 debtors must: (i) close existing bank accounts; (ii) establish and maintain a general account, payroll account, and tax account; and (iii) obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information related to Chapter 11 cases.

14. The Guideline requirements provide a clear line of demarcation between pre-petition and post-petition transactions and operations, prevent the inadvertent post-petition payment of pre-petition claims, and facilitate debtor-in-possession accounting.

15. Here, the Debtor can achieve the same objective without having to comply with all of these requirements with regard to the bank accounts and cash management system, and for the reasons set forth below, the Debtor requests a waiver of certain of the requirements in the Guidelines.

16. In this case, the Debtor maintains multiple checking accounts with Wells Fargo. The Debtor's accounts and cash management system are setup with electronic funds transfer payments from the Medicare and Medicaid programs and with numerous health insurance companies. Closing the accounts and altering the cash management system would deeply disrupt the Debtor's operations and payroll systems, payment from health insurers and Medicare and Medicaid, and would

---

[1] *See* http://www.azb.uscourts.gov/Documents/UST_Guidelines.pdf

hinder the Debtor's ability to manage the hospital at the critical initial stages of its Chapter 11 case. The Debtor anticipates that changing to new accounts would take months to accomplish.

17. The Debtor's relationships with patients, health insurers, Medicare and Medicaid, and employees are essential to the Debtor's operations. The delay, confusion, and disruption that would result if the Debtor were required to substitute new debtor-in-possession bank accounts for each of the bank accounts would strain the Debtor's critical relationships.

18. The relief requested herein is appropriate and within the authority of this Court. The Debtor's request for authorization to continue to use the existing bank accounts and cash management system has been held to be consistent with Section 363(c)(1) of the Bankruptcy Code, which allows a debtor-in-possession in the ordinary course of business to use property of the estate. *See In re Dant & Russell, Inc.*, 853 F.2d 700, 704 (9th Cir. 1988). In Chapter 11 cases like this case, Courts waive the United States Trustee's Guidelines, recognizing that such requirements may be detrimental to a debtor's post-petition business operations and restructuring efforts. *See, e.g., In re Florence Hospital at Anthem,* LLC, Case No. 4:13-bk-03201-BMW, Dkt. #41 (Bankr. D. Ariz. Feb. 12, 2013); *see also In re PFP Holdings, Inc., et al.*, No. 08-00899, Dkt. #65 (Bankr. D. Ariz. Feb. 11, 2009); *In re Taro Props. Ariz. I, LLC, et al.*, No. 08-10427, Dkt. #33 (Bankr. D. Ariz. Aug. 20, 2008).

19. Accordingly, the Debtor requests that its bank accounts be deemed debtor-in-possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed before the Petition Date.

20. Likewise, the Debtor seeks authority to maintain its existing cash management system. The Debtor's cash management procedures constitute ordinary,

usual and essential business practices, and are similar to those used by other corporate enterprises in the same industry.

21. The Debtor will continue to maintain detailed records reflecting all transfers of funds, and the Debtor requests that all depository banks where the bank accounts are maintained be authorized to continue to administer those accounts, as they were maintained before the Petition Date, without interruption and in the usual and ordinary course of business, and to pay all checks, drafts, or wires issued on the bank accounts on account of any claims arising on or after the Petition Date, so long as sufficient funds remain in the bank accounts.

22. The Debtor respectfully requests that: (i) its depository banks be authorized to honor all representations from the Debtor as to which checks should be honored or dishonored; and (ii) any final payment made by a depository bank at which the Debtor maintained an account before the Petition Date against any of the bank accounts, or any instrument issued by a depository bank on behalf of the Debtor under a "midnight deadline" or otherwise, shall be deemed to be paid before the Petition Date, whether or not actually debited from the Debtor's bank accounts pre-petition. To the extent that the Debtor has directed that any pre-petition checks be dishonored, it reserves the right to issue replacement checks to pay the amounts related to such dishonored checks, consistent with the orders of this Court. The Debtor shall provide written direction to the depository banks and their counsel, if known, regarding which checks should be honored and which checks should not. The depository banks shall be permitted reasonably to rely in good faith on the direction and representations from the Debtor regarding the honoring of checks. Absent gross negligence or bad faith, the depository banks shall not be liable for the failure to honor any checks or the inadvertent honoring of any checks that should not have been honored, as directed by the Debtor.

23. To the extent that any depository bank has a valid pre-petition claim

against the Debtor that is subject to a right of setoff, funds held in a bank account with such depository bank may constitute cash collateral under Bankruptcy Code § 363(c)(2). Since the provision of adequate protection is a prerequisite to use of cash collateral under Bankruptcy Code § 363(d), the Debtor proposes to provide such adequate protection to any depository bank with an allowable pre-petition claim against the Debtor that does not arise from the operation of a bank account in the form of a first priority post-petition replacement lien on its bank accounts to the extent such depository bank continues to honor checks and drafts on such bank accounts post-petition. Such adequate protection shall be without prejudice to the rights of any depository bank to apply to this Court for additional or alternative adequate protection.

**B.    Business Forms and Checks.**

24.    To minimize expense to the estate and disruption of its business, the Debtor requests that it be authorized to continue to use all checks, correspondence, and business forms (including, but not limited to, letterhead, stationary, purchase orders, employment applications, invoices, etc.) in the form that they existed immediately prior to the Petition Date, without reference to the Debtor's status as debtor-in-possession.

25.    Due to the nature and scope of the Debtor's business operation and the large number of vendors, patients and other parties with whom the Debtor deals on a regular basis, it is necessary that the Debtor be permitted to continue to use its existing business forms without alteration or change.

26.    Changing the business forms would be unduly expensive and burdensome to the Debtor's estate, disruptive to the Debtor's business operation and would not confer any benefit on those dealing with the Debtor. For this reason, the Debtor requests that it be authorized to use existing business forms without being required to place the label "debtor-in-possession" on each business form. *See In re*

*Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995) (holding the United States Trustee's requirement that the debtor issue checks with "debtor-in-possession" designation to be unenforceable); *see also In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997) (same).

## **NOTICE**

27. No trustee, examiner, or official committee has been appointed in this case.

28. Notice of this Motion has been given to the Office of the United States Trustee, the Debtor's secured creditors, and the Debtor's twenty (20) largest unsecured creditors. Based on the nature of the relief requested in this Motion, the Debtor submits that no other notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter an Interim Order, substantially in the form attached hereto as **Exhibit A**, and a Final Order:

A. Authorizing, but not directing, the Debtor to maintain and use its existing bank accounts, cash management system and business forms;

B. Setting a final hearing regarding this matter; and

C. Granting such other and further relief that the Court deems just and proper.

RESPECTFULLY SUBMITTED this 19th day of November, 2013.

JENNINGS, STROUSS & SALMON, P.L.C.


By: /s/ Kami M. Hoskins
    Carolyn J. Johnsen
    Kami M. Hoskins
    *Proposed Attorneys for the Debtor*