Carolyn J. Johnsen - 011894
cjjohnsen@jsslaw.com
Kami M. Hoskins - 026271
khoskins@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:13-bk-20029<br><br>**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. § 366 DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES AND ESTABLISHING DETERMINATION AND OBJECTION PROCEDURES**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

Surgical Specialty Hospital of Arizona, LLC, debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), by and through its undersigned counsel, hereby files the *Emergency Motion for Interim and Final Orders Under 11 U.S.C. §§ 366 Determining Adequate Assurance of Payment for Future Utility Services and Establishing Determination and Objection Procedures* (the "**Motion**"). The Debtor supports the Motion with the contemporaneously filed *Declaration of William J. Comer in Support of First Day Motions* (the "**Comer Declaration**"), the following Memorandum of Points and Authorities, and all matters of record.

# MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE.

1. On November 19, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business and manage its assets as debtor in possession.

3. This Court has jurisdiction over these Chapter 11 proceedings under 28 U.S.C. §§ 157 and 1334.

4. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2).

5. The Debtor is an Arizona limited liability company with its principal place of business in Phoenix, Maricopa County, Arizona.

6. Venue of Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7. The relief requested by this Motion may be granted in accordance with the provisions of 11 U.S.C. §§ 105(a), 345, and 363, FED. R. BANKR. P. 9006(c) and 9007, and LOCAL R. BANKR. P. 9013-1(h).

## FACTUAL BACKGROUND

**A. Overview.**

8. The Debtor was formed on March 28, 2005 under the laws of the State of Arizona. It also operates under the name The Surgical Hospital of Phoenix. The principal activity of the Debtor is to provide surgical operating facilities and related healthcare services to doctors and their patients in Maricopa County, Arizona.

9. The Debtor is a full-service hospital specializing in inpatient and outpatient spine and orthopedic surgeries. It also provides an additional wide range of procedures including bariatric, general surgery, pain management, gastrointestinal, imaging and lab services. The Debtor is a 100% physician-owned hospital consisting

of 15 physician owners (members) and has approximately 200 physicians credentialed to provide services. The Debtor's staff consists of about 100 employees, including nurses.

10. William J. Comer manages the Debtor and is the Chief Executive Officer. The Debtor's Board of Directors is comprised of Daniel Lieberman, Chair; Christopher Yeung, Chief of Staff; Steven Kassman, owner designee; and William J. Comer, ex-officio.

11. The Debtor leases its hospital facility from SSHA Building, LLC ("**SSHA**"), an Arizona limited liability company owned by the physicians who also own the Debtor. The Debtor's monthly lease payments to SSHA are $101,946.20. SSHA pays a monthly management fee of $4,574.63 to the Debtor.

12. The Debtor has been designated as the preferred healthcare provider of the Phoenix Coyotes, which are part of the National Hockey League. The Debtor consistently demonstrates low infection rates (currently .03%) and very high patient satisfaction scores (currently on average of 83%). The Debtor prioritizes quality measures and patient care and as a result has patients and their families providing superior feedback.

B. **Assets and Liabilities.**

13. The Debtor's assets consist of inventory and supplies believed to be valued at approximately $1,000,000.00, equipment believed to be valued at approximately $1,800,000.00, and collectible receivables believed to have a value of approximately $1,300,000.00. Annual gross revenues are about $70,000,000.00; annual net revenues are about $22,000,000.00.

14. The Debtor's secured debt consists of about $425,000.00 owed to Wells Fargo Bank, National Association, which claims a security interest in all of the Debtor's assets, plus approximately $450,000.00 related to various capital leases.

15. The Debtor's accounts payable totals approximately $2,700,000.00, and

4536737v1(63927.1)  3
Case 2:13-bk-20029-DPC  Doc 5  Filed 11/19/13  Entered 11/19/13 17:45:04  Desc
Main Document  Page 3 of 15

total unsecured trade debt is approximately $3,200,000.00. The Debtor has a loan outstanding from its affiliate, SSHA in the amount of approximately $2,145,833.39.

16. In addition, the Debtor, as a physician-owned hospital, has the obligation to report potential compliance issues pursuant to various health care regulations. The Debtor's pending issues could result in liability for the return of Medicare/Medicaid funds as high as $14,700,000.00. The Debtor, however, disputes such liability and has been working with the appropriate agencies toward a resolution.

## C. **Events Precipitating the Bankruptcy Filing.**

17. Over the last few years, the Debtor has suffered from cash-flow problems based on a number of administrative issues, including the lack of strict vendor and supply management, taking on non-profitable cases, maintaining unprofitable health care payor contracts, inefficient management of accounts receivable, overstaffing, and dealing with regulatory questions. Since Mr. Comer's arrival in 2012, the Debtor has taken many steps to rectify these problems. Specifically, the Debtor has reduced salaries by over $2,000,000.00; reduced costs of certain of its critical surgical devices, namely implants; and eliminated most of its non-profitable cases, all while maintaining patient satisfaction and quality measures at industry best-practice standards.

18. Nevertheless, despite the past and on-going efforts to increase revenues, decrease expenses, and maintain quality measures, the tight cash situation persists. Consequently, the Debtor believes that a Chapter 11 proceeding would give it a respite from the cash strains and allow it to better address creditor issues and restructure its operations and its debt.

## **RELIEF REQUESTED**

19. The Debtor seeks entry of interim and final orders: (i) determining that the entities providing utility services to the Debtor have been provided adequate

assurance of payment within the meaning of Bankruptcy Code § 366, pending entry of a final order; (ii) approving the Debtor's proposed offer of adequate assurance of payment and procedures for which the Utility Companies (as defined below) may request additional or different adequate assurance; (iii) prohibiting the Utility Companies from altering, refusing, or disconnecting services to the Debtor on account of the filing, any pre-petition amounts outstanding, or on account of any perceived inadequacy of the Debtor's proposed adequate assurance, pending entry of a Final Order; (iv) establishing procedures for Utility Companies that seek to opt out of the proposed adequate assurance procedures; (v) determining that the Debtor is not required to provide any additional adequate assurance, beyond that proposed in this Motion, pending entry of the Final Order; and (vi) setting a final hearing on the Debtor's proposed adequate assurance. Attached hereto as **Exhibit A** is a list of the Utility Companies that rendered service to the Debtor as of the Petition Date (collectively, the "**Utility Companies**").

## **PROPOSED PROCEDURES FOR ADEQUATE ASSURANCE**

20. The Debtor proposes the following procedures for determining adequate assurance of payment under Bankruptcy Code § 366 ("**Proposed Procedures for Adequate Assurance**").

**A.** **Proposed Adequate Assurance.**

21. The Debtor fully intends to pay all post-petition obligations owed to the Utility Companies in a timely manner.

22. The Debtor proposes to provide the Utility Companies with "adequate assurance" of future payment in accordance with Bankruptcy Code §§ 366(b) and (c) by agreeing to provide a deposit up to the equivalent of the value of one month average utility billing over the past 12 months of Utility Services at the request of the Utility Companies. The Debtor will provide the Proposed Adequate Assurance deposit to each Utility Company only upon its written request. The deposit, if

requested and made, will remain in place with the Utility Company in addition to the Debtor's monthly payment for Utility Services, and it will provide adequate assurance of payment with respect to all accounts that the Debtor has with such Utility Company whether now active or established in the future. The Debtor will timely pay any balances due on undisputed post-petition invoices from the Utility Companies. Together with the Debtor's ability to pay future utility services in the ordinary course of business, these are adequate assurances of continued payment for services rendered by the Utility Companies (collectively, the "**Proposed Adequate Assurance**"). If any Utility Company believes additional adequate assurance is required, they may request additional assurance in accordance with the Determination Procedures outlined below.

B. **Determination Procedures.**

23. Notwithstanding the Proposed Adequate Assurance defined above, the Debtor proposes to further protect the Utility Companies by establishing procedures for the Utility Companies to request additional assurance of payment for future utility services. Specifically, the Debtor proposes that an Interim Order be granted and contain the following procedures for a determination of adequate assurances (the "**Determination Procedures**"):

    a. Aside from complying with the procedures outlined below, the Utility Companies are prohibited from discontinuing or refusing service on account of any unpaid pre-petition changes, or requiring additional adequate assurance of payment other than the Proposed Adequate Assurance pending entry of the Final Order.

    b. Within 10 business days after the entry of the Interim Order, the Debtor shall provide a copy of the Interim Order to all Utility Companies identified in Exhibit A.

    c. Any Utility Company desiring additional assurance of payment in the

form of additional deposits, pre-payments, or other means must serve written request for such additional assurance upon the Debtor's attorney at the following address:

> Carolyn J. Johnsen
> Kami M. Hoskins
> JENNINGS, STROUSS & SALMON, PLC
> One E. Washington Street, Suite 1900
> Phoenix, AZ 85004-2554

d. Any Utility Company's request for additional adequate assurance must (i) be in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtor's payment history relevant to affected account(s), including any security deposits; and (iv) set forth why the Utility Company believes the Proposed Adequate Assurance is insufficient adequate assurance of future payment.

e. On the Debtor's attorneys receipt of any additional assurance requests at the address set forth above, the Debtor shall have 14 days from the date of receipt of the additional assurance request, to negotiate with such Utility Company to resolve the adequate assurance request (the "**Resolution Period**").

f. The Debtor may, in its discretion, resolve any adequate assurance request by mutual agreement with the Utility Company without further order of the Court, and may, in connection with any such agreement, in its discretion, provide a Utility Company with additional adequate assurance of future payment, including, but not limited to, cash deposits, pre-payments, or other forms of security, without further order of the Court if the Debtor believes such additional assurance is reasonable.

g. If the Debtor determines that any request is not reasonable and are not able to resolve the request during the Resolution Period, the Debtor will

request a hearing to determine the adequacy of assurances of payment with respect to a particular Utility Company under Bankruptcy Code § 366(c).

h. Pending the resolution of such hearing, any affected Utility Company will be prohibited from discontinuing, altering, or refusing services to the Debtor on account of outstanding balances for pre-petition services or on about of any objection to the Proposed Adequate Assurance.

## C. <u>**Objection Procedures.**</u>

24. Historically, debtors were able to put the burden on utility companies under Bankruptcy Code § 366, to argue that whatever form of adequate assurance proposed by the debtor was insufficient. The recent modifications to Bankruptcy Code § 366 arguably shift the burden onto debtors to provide adequate assurance the utility provider finds satisfactory, and to seek court review if the utility provider does not accept the proposed adequate assurance. Now under Bankruptcy Code § 366, a Utility Company could, on the 30th day following the Petition Date, announce that the proposed adequate assurance is not acceptable, demand an unprecedented deposit or prepayment in any amount it deems fit and threaten to terminate utility service the next day unless the Debtor complied with the demand. While the Debtor does not concede that the foregoing scenario reflects a correct interpretation of the revised Bankruptcy Code § 366, the Debtor nonetheless believes it is prudent to require Utility Companies to raise any objections to the Adequate Assurance Procedures so that such objections may be heard by the Court before the running of the 30-day period following the Petition Date.

25. To avoid this damaging situation, the Debtor proposes the following objection procedures to resolve potential objections to the Interim Order or the Proposed Adequate Assurance (the "**Objection Procedures**"):

a. Any Utility Company that objects to the Interim Order of the Proposed

Adequate Assurance must file an Objection with the Court on or before 20 days of the entry of the Interim Order and serve it upon the Debtor's counsel at the address referenced in the heading to this Motion.

b. Any Objection must: (i) be in writing; (ii) set forth the location for which the utility services are provided; (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits; (iv) set forth why the Utility Company believes the Interim Order or the Proposed Adequate Assurance is insufficient adequate assurance of future payments; (v) set forth why the Utility Company believes it should be exempt from such order and procedures.

c. The Debtor may in its discretion, resolve any Objection by mutual agreement with the Utility Company and without further order of the Court, and may, in connection with any such agreement, in their discretion, provide a Utility Company with additional adequate assurance of future payment including, but not limited to, cash deposit, prepayment and/or other forms of security, without further order of the Court if the Debtor believes such additional assurance is reasonable.

d. If the Debtor determines that the Objection is not reasonable and the parties are unable to reach a prompt alternative resolution, the Objection will be heard on an expedited basis, if possible. During this period, the Utility Company may not discontinue, alter, or refuse services to, or discriminate against, the Debtor on account of any unpaid pre-petition charges or the commencement of this case.

e. All Utility Companies that do not file an Objection are deemed to consent to the Adequate Assurance and shall be bound. The sole recourse of all Utility Companies that do not timely file an Objection shall be to submit an additional assurance request pursuant to these

procedures and such Utility Company shall be enjoined from altering, refusing, or discontinuing service to, or discriminating against, the Debtor pending any hearing that may be conducted pursuant to these procedures.

### D. **Subsequent Modification to Exhibit A.**

26. The Debtor has made an extensive and good-faith effort to identify all of the Utility Companies and include them in Exhibit A. Nonetheless, it is possible that the Debtor has not identified or included certain Utility Companies on Exhibit A. To the extent that the Debtor identifies additional Utility Companies (the "**Additional Utility Companies**"), the Debtor will file amendments to Exhibit A, and shall serve a copy of the Order on such Additional Utility Companies. The Debtor requests that the Order be binding on all Utility Companies, including the Additional Utility Companies, regardless of when such Utility Company was added to Exhibit A; provided that, with respect to any Additional Utility Company, the thirty (30) day and twenty (20) day periods described in the procedures above shall commence as of the date that the Debtor serves the Order on such Additional Utility Company as opposed to entry of the Order. Any request for adequate assurance by such Additional Utility Company must otherwise comply with the requirements set forth in the Motion and Order or shall be deemed to assent to the Proposed Adequate Assurance.

## **BASIS FOR RELIEF**

27. Pursuant to Bankruptcy Code § 366, during the first twenty (20) days following the commencement of a bankruptcy case, a utility may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure of the debtor to pay a pre-petition debt for utility services provided. Following the 20-day period, however, utility companies may alter, refuse, or discontinue service if the debtor does not "furnish adequate

4536737v1(63927.1)    10
Case 2:13-bk-20029-DPC    Doc 5    Filed 11/19/13    Entered 11/19/13 17:45:04    Desc
Main Document    Page 10 of 15

assurance of payment" of post-petition utility service obligations. The continuance of utility services is vital to the ongoing success of the Debtor during the pendency of these Chapter 11 proceedings. In the ordinary course of business, the Debtor relies on the Utility Companies to provide electricity, water, telephone, telecommunications and internet services.

28. Accordingly, by this Motion, the Debtor seeks authority to provide to the Utility Companies "adequate assurance of payment" within the meaning of Bankruptcy Code § 366. If the Utility Companies are permitted to terminate service on the twenty-first day after the Petition Date, there will be severe disruptions in the Debtor's business affairs. Further, to avert such harm, the Debtor would be required to pay whatever amounts are demanded by the Utility Companies to avoid the cessation of necessary services.

29. Bankruptcy Code § 366 provides that:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A) For purposes of this subsection, the term "assurance of payment" means--

(i) a cash deposit;

(ii) a letter of credit;

(iii) a certificate of deposit;

(iv) a surety bond;

(v) a prepayment of utility consumption; or

(vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

(B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider--

(i) the absence of security before the date of the filing of the petition;

(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

(iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

30. Bankruptcy Code § 366(c), like Section 366(b), simply requires that a utility's assurance of payment be "adequate." Courts have long recognized that adequate assurance of future performance does not require an absolute guarantee of a debtor's ability to pay. *See Steinebach v. Tucson Elec. Power (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). *See also, In re Santa Clara Circuits W., Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982); *In re George C. Frye Co.*, 7 B.R. 856, 858 (Bankr. D. Me. 1980).

31. In addition, there is nothing in Bankruptcy Code § 366 that precludes a

court from determining that the amount of such adequate assurance of payment is zero. *See Virginia Elec. & Power Co. v. Caldor, Inc*., 117 F.3d 646, 650 (2nd Cir. 1997) (noting that "[e]ven assuming that 'other security' should be interpreted narrowly, we agree . . . that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with "adequate assurance of payment").

32. Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should focus "on the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *See In re Penn. Cent. Transp. Co*., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operating of the [debtor] merely to give further security to suppliers who are already reasonably protected"). Accordingly, demands by a utility for a guarantee of payment when they already have adequate assurance of payment in light of the Debtor's specific circumstances should be refused.

33. The Debtor has a powerful incentive to stay current on its utility obligations because of its significant reliance on utility services, particularly electric, water and gas for operations of the Debtor's various restaurant operations. Without utility services, the Debtor will be unable to continue such operations, which will be detrimental to all creditors. The Court should consider these factors when considering the amount, if any, of adequate assurance payments.

34. In light of the foregoing, the Debtor submits that if the Utility Companies disagree with the Debtor's analysis, the procedures proposed in this Motion will enable the parties to negotiate and, if necessary, seek Court intervention without unnecessarily jeopardizing the Debtor's continuing operations.

4536737v1(63927.1)    13
Case 2:13-bk-20029-DPC    Doc 5    Filed 11/19/13    Entered 11/19/13 17:45:04    Desc
Main Document    Page 13 of 15

35. The proposed procedures are necessary for the Debtor to carry out its continued operations and reorganization efforts. If the Court does not approve the proposed procedures, the Debtor could be forced to address numerous requests by its Utility Companies in a disorganized manner at a critical point in its reorganizations. Moreover, the Debtor could be blindsided by a Utility Company unilaterally deciding after the thirty-first day that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. As set forth above, discontinuation of service would essentially halt the Debtor's operations, putting the Debtor's reorganization efforts in extreme jeopardy. The proposed procedures set forth a fair process, which will enable all parties to negotiate their respective positions and, where necessary, seek Court intervention without jeopardizing the Debtor's reorganization effort.

## **NOTICE**

36. No trustee, examiner, or official committee has been appointed in this case.

37. Notice of this Motion has been given to the Office of the United States Trustee, the Debtor's secured creditors, the Debtor's twenty (20) largest unsecured creditors, and the Utility Companies listed in Exhibit A hereto. Based on the nature of the relief requested in this Motion, the Debtor submits that no other notice need be given.

WHEREFORE, the Debtor respectfully requests the Court enter an Order substantially in the form attached hereto as **Exhibit B**:

A. Determining that the Utility Companies have been provided with adequate assurance of payment within the meaning of Bankruptcy Code § 366;

B. Approving the Debtor's Proposed Adequate Assurance and the Adequate Assurance Procedures;

C. Prohibiting Utility Companies from discontinuing, altering, or refusing

service to, or discriminating against, the Debtor;

      D.      Establishing the Objection Procedures;

      E.      Determining that the Debtor is not required to provide any additional adequate assurance, beyond what is proposed by this Motion, and

      F.      Granting such other and further relief as the Court deems appropriate under the facts and circumstances.

RESPECTFULLY SUBMITTED this 19th day of November, 2013.

JENNINGS, STROUSS & SALMON, P.L.C.

By: /s/ Kami M. Hoskins
    Carolyn J. Johnsen
    Kami M. Hoskins
    *Proposed Attorneys for the Debtor*