Carolyn J. Johnsen - 011894
cjjohnsen@jsslaw.com
Kami M. Hoskins - 026271
khoskins@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SURGICAL SPECIALTY HOSPITAL OF ARIZONA, LLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:13-bk-20029<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES AND SALARIES AND TO HONOR AND CONTINUE PRE-PETITION EMPLOYEE BENEFITS**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

Surgical Specialty Hospital of Arizona, LLC, debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), by and through its undersigned counsel, hereby files the *Emergency Motion for Order Authorizing Debtor to Pay Pre-Petition Wages and Salaries and to Honor and Continue Pre-Petition Employee Benefits* (the "**Motion**"). The Debtor supports the Motion with the contemporaneously filed *Declaration of William J. Comer in Support of First Day Motions* (the "**Comer Declaration**"), the following Memorandum of Points and Authorities, and all matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE.

1. On November 19, 2013 (the "**Petition Date**"), the Debtor filed a

voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business and manage its assets as debtor in possession.

3. This Court has jurisdiction over these Chapter 11 proceedings under 28 U.S.C. §§ 157 and 1334.

4. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2).

5. The Debtor is an Arizona limited liability company with its principal place of business in Phoenix, Maricopa County, Arizona.

6. Venue of Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7. The relief requested by this Motion may be granted in accordance with the provisions of 11 U.S.C. §§ 105(a), 507, and 363, FED. R. BANKR. P. 9006(c) and 9007, and LOCAL R. BANKR. P. 9013-1(h).

## FACTUAL BACKGROUND

**A.　Overview.**

8. The Debtor is a full-service hospital specializing in inpatient and outpatient spine and orthopedic surgeries. It also provides an additional wide range of procedures including bariatric, general surgery, pain management, gastrointestinal, imaging and lab services. The Debtor is a 100% physician-owned hospital consisting of 15 physician owners (members) and has approximately 200 physicians credentialed to provide services. The Debtor's staff consists of about 100 employees, including nurses.

9. William J. Comer manages the Debtor and is the Chief Executive Officer. The Debtor's Board of Directors is comprised of Daniel Lieberman, Chair; Christopher Yeung, Chief of Staff; Steven Kassman, owner designee; and William J. Comer, ex-officio.

10. The Debtor leases its hospital facility from SSHA Building, LLC ("**SSHA**"), an Arizona limited liability company owned by the physicians who also own the Debtor. The Debtor's monthly lease payments to SSHA are $101,946.20. SSHA pays a monthly management fee of $4,574.63 to the Debtor.

11. The Debtor has been designated as the preferred healthcare provider of the Phoenix Coyotes, which are part of the National Hockey League. The Debtor consistently demonstrates low infection rates (currently .03%) and very high patient satisfaction scores (currently on average of 83%). The Debtor prioritizes quality measures and patient care, and as a result, patients and their families consistently provide superior feedback.

**B.     Assets and Liabilities.**

12. The Debtor's assets consist of inventory and supplies believed to be valued at approximately $1,000,000.00, equipment believed to be valued at approximately $1,800,000.00, and collectible receivables believed to have a value of approximately $1,300,000.00. Annual gross revenues are about $70,000,000.00; annual net revenues are about $22,000,000.00.

13. The Debtor's secured debt consists of about $425,000.00 owed to Wells Fargo Bank, National Association, which claims a security interest in all of the Debtor's assets, plus approximately $450,000.00 related to various capital leases.

14. The Debtor's accounts payable totals approximately $2,700,000.00, and total unsecured trade debt is approximately $3,200,000.00. The Debtor has a loan outstanding from its affiliate, SSHA in the amount of approximately $2,145,833.39.

15. In addition, the Debtor, as a physician-owned hospital, has the obligation to report potential compliance issues pursuant to various healthcare regulations. The Debtor's pending issues could result in liability for the return of Medicare/Medicaid funds as high as $14,700,000.00. The Debtor, however, disputes such liability and has been working with the appropriate agencies toward a

resolution.

C. **Events Precipitating the Bankruptcy Filing.**

16. Over the last few years, the Debtor has suffered from cash-flow problems based on a number of administrative issues, including the lack of strict vendor and supply management, taking on non-profitable cases, maintaining unprofitable healthcare payor contracts, inefficient management of accounts receivable, overstaffing, and dealing with regulatory questions. Since Mr. Comer's arrival in 2012, the Debtor has taken many steps to rectify these problems. Specifically, the Debtor has reduced salaries by over $2,000,000.00; reduced costs of certain of its critical surgical devices, namely implants; and eliminated most of its non-profitable cases, all while maintaining patient satisfaction and quality measures at industry best-practice standards.

17. Nevertheless, despite the past and on-going efforts to increase revenues, decrease expenses, and maintain quality measures, the tight cash situation persists. Consequently, the Debtor believed that a Chapter 11 proceeding would give it a respite from the cash strains and allow it to better address creditor issues and restructure its operations and its debt.

**RELIEF REQUESTED**

18. The Debtor requests an Order pursuant to Bankruptcy Code §§ 105(a) and 507(a)(4) authorizing it to pay pre-petition wages and salaries of its active employees and all related local, state, and federal withholding taxes, Social Security taxes and Medicare taxes.

19. In addition, Debtor seeks an Order authorizing, but not directing, the Debtor to honor, continue, and pay costs associated with its employee benefits programs.

20. For the reasons set forth below, Debtor submits that it is in the best interest of the estate for this Court to authorize the requested payments.

## LEGAL ARGUMENT

21. The Debtor's current payroll is due to be paid to the employees on November 29, 2013, and covers the pre-petition period from November 10, 2013 through November 19, 2013. The estimated payroll is $166,655.29, which consists of wages, payroll taxes, employee reimbursements, and employee paid insurance premiums.

22. It is necessary for the Debtor to pay these pre-petition wages and salaries, related taxes, and the other contractual amounts required to maintain in place its various employee benefit programs. If they are not paid, these employees will suffer extreme personal hardship and in some cases may be unable to satisfy basic living expenses. Such a result would destroy employee morale and result in immediate and unmanageable employee turnover threatening the Debtor's ability to operate.

23. The compensation the Debtor seeks to pay to employees constitutes priority claims under Bankruptcy Code § 507(a)(4) to the extent of a maximum of $11,725.00 per employee. All of the wages and salaries sought to be paid under this motion were earned by employees within 90 days of the Petition Date and are less than the maximum priority amount per employee.

24. Pursuant to Bankruptcy Code §§ 105(a) and 363, the Debtor seeks to pay pre-petition wages and salaries, related taxes, and those costs associated with various employee benefits.

25. Section 363(c) permits a debtor to use, sell, or lease property outside the ordinary course of business with approval by the bankruptcy court. Further, Section 105(a) provides that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

26. Bankruptcy Code § 507(a)(4) gives priority up to $11,725.00 per individual for pre-petition claims for wages, salaries, and certain other employee

benefits.  The Debtor believes that all of the employee obligations for which the Debtor seeks approval are entitled to priority.  Because claims up to the statutory limit must be paid in full before payment of general unsecured claims under a plan of reorganization, satisfaction of these employee claims at this time is appropriate. Debtor believes there will be sufficient funds to pay administrative and priority claims.

27. Debtor's employees are essential to Debtor's business.  If wages and salaries are not paid, employee morale will deteriorate and will undoubtedly lead to an exodus of employees.

28. Bankruptcy courts have granted similar relief in other Chapter 11 cases. *See, e.g. In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing debtor-in-possession to pay pre-petition employee wages and benefits, and health, life and workers' compensation insurance premiums).  Honoring these benefits recognizes that a Debtor's employees are critical to the continued operation of a Debtor's business, and that satisfaction of these benefits will ultimately benefit all creditors.  *See LTV Corp. v. Aetna Casualty & Surety Co. (In re Chateaugay Corp)*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990).

## **NOTICE**

29. No trustee, examiner, or official committee has been appointed in this case.

30. Notice of this Motion has been given to the Office of the United States Trustee, the Debtor's secured creditors, and the Debtor's twenty (20) largest unsecured creditors.  Based on the nature of the relief requested in this Motion, the Debtor submits that no other notice need be given.

WHEREFORE, the Debtor requests that the Court enter the proposed Order, attached hereto as **Exhibit A**:

A. Authorizing the payment of pre-petition wages and salaries and all

related taxes;

B. Authorizing the payment of costs associated with employee benefit programs; and

C. Granting such other and further relief as is just and proper under the facts and circumstances.

DATED this 19th day of November, 2013.

JENNINGS, STROUSS & SALMON, P.L.C.

By: /s/ Kami M. Hoskins
    Carolyn J. Johnsen
    Kami M. Hoskins
    *Proposed Attorneys for the Debtors*